UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID'S BRIDAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> STARMOUNT, INC. and INFOR (US), INC., <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT** |

Plaintiff David's Bridal, Inc. ("DB"), by and through its undersigned counsel, for its Complaint against defendants Starmount, Inc. ("Starmount") and Infor (US), Inc. ("Infor," and together, "Defendants"), alleges as follows:

**Nature of the Action**

1. This action arises out of Defendants' (1) complete failure to deliver the mobile point-of-sale (POS) system they promised to develop and implement across all DB stores in flagrant and ongoing breach of their contractual obligations to DB pursuant to the Master Services Agreement, dated October 17, 2014, between the parties (the "MSA"), and (2) knowingly false promises to DB about their commitment to the project in connection with Infor's 2016 acquisition of Starmount.

2. DB is the largest bridal store retail chain in the United States and a leading purveyor of formal women's and girl's attire. In 2014, DB embarked on a strategic initiative to improve in-store customer experience and increase in-store efficiency by replacing legacy registers and other hardware with a mobile POS system (the "Mobile POS System") in all DB stores. After extensive due diligence, DB contracted with Starmount, pursuant to the MSA, to develop and implement the Mobile POS System, with a targeted rollout in all stores of August

2016 at a cost of approximately $4 million. DB selected Starmount after Starmount explicitly promised to deliver a multi-layer architecture in which DB would be able to layer its own custom software code on top of Starmount's base code. This architecture would enable DB to utilize its proprietary modules as part of a seamless Mobile POS System, supported and regularly upgraded by Starmount.

3. Unfortunately, in ongoing breach of its contractual obligations, Starmount never delivered the promised product for use across DB stores. To the present day, the product has been piloted in only fourteen (14) stores, does not have the promised multi-layer architecture and is riddled with software bugs.

4. Then, in July 2016, Starmount was acquired by Infor. As part of that acquisition, DB met with representatives from both companies, who explicitly assured DB that Infor was committed to fixing and finalizing the development of the Mobile POS System utilizing the Starmount architecture. Based on those assurances, DB consented to the assignment of the MSA and agreed to continue the strategic partnership pursuant to the MSA.

5. Following the acquisition, however, it quickly became apparent that Defendants had no intention of delivering the Mobile POS System and their contrary representations to DB were knowingly and intentionally false. Thus, shortly after meeting with DB, Defendants abandoned the Starmount architecture and pushed DB to move to a cloud-based POS system that did not offer DB the functionality promised by Starmount. In addition, Defendants continued to breach the MSA by failing to provide sufficient, competent personnel to support the DB system, taking more than one year to upgrade DB to the most current version of the Starmount base code, and continuing in their failure to roll out the promised Mobile POS System across all DB stores.

At the same time, Defendants continued to demand more money from DB and the targeted roll out fell further and further behind schedule.

6. In total, DB has spent approximately $10 million on their Mobile POS System, including: (a) more than $5.5 million in software licensing, servicing and other fees to Defendants, (b) more than $800,000 in hardware purchased for the project, including servers, tablets and other equipment, and (c) more than $3.4 million in both internal and external project support expenditures, and has received virtually nothing in return.

7. DB has attempted in good faith to negotiate a resolution of the instant dispute, but Defendants are simply unwilling to invest the resources necessary to deliver the system promised to DB under the MSA.  Accordingly, DB is left with no choice but to commence this action seeking (a) monetary damages in amount to be determined at trial but no less than $10 million for Starmount's breaches of the MSA, breach of the covenant of good faith and fair dealing, and unjust enrichment, (b) monetary damages, including compensatory damages, lost profits and punitive damages, in an amount to be determined at trial, for Defendants' fraudulent misrepresentations, (c) costs and expenses, including attorneys' fees, and (d) such other and further relief as the Court deems just and proper,

## **The Parties**

8. Plaintiff David's Bridal, Inc. is a Florida corporation with its principal place of business in Pennsylvania.

9. Upon information and belief, defendant Starmount, Inc. is a Delaware corporation with its principal place of business in Texas and a wholly owned subsidiary of defendant Infor (US), Inc.

10. Upon information and belief, defendant Infor (US), Inc. is a Delaware corporation with its principal place of business in New York.

## Jurisdiction and Venue

11. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332, because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

12. Venue is proper in this District under 28 U.S.C. §1391.  Further, the parties consented to venue in this District in accordance with Paragraph 20(a) of the Master Services Agreement, dated October 17, 2014.

## Factual Background

**A.    The Parties**

13. DB is engaged in the business of selling bridal gowns, bridal accessories, and bridal party and women's and girl's formalwear (including prom, quinceanera and special occasion) dresses and related accessories, wedding and special occasion invitations, and gifts for female wedding attendants.

14. DB was founded in 1950 as a family-owned salon and now has more than 300 stores in the United States, as well as locations in Canada and the United Kingdom.  It is the largest purveyor of bridal gowns in the United States.

15. Starmount is a provider of software systems for the retail industry.  As of July 2016, Starmount became a wholly-owned subsidiary of Infor.

16. Infor is a provider of business-related software applications to numerous industries.

**A.     The MSA**

17. In 2014, DB embarked on a strategic initiative to significantly improve in-store customer experience and increase efficiency of store stylists by leveraging mobile-based technology, in order to drive higher conversion rates among customers and increase revenue.

18. DB sought a more evolved and customized version of the standard mobile POS system. In particular, DB sought to integrate the following business processes into a mobile POS system that could be utilized by in-store Stylists on the selling floor and replace legacy registers and other hardware:

- <u>In-store appointments</u>: On average, DB stylists spend more than an hour with customers during an in-store appointment. A mobile solution would enable the Stylist to spend more time on the floor with the customer (as opposed to leaving customer to work on a fixed computer or register).

- <u>Events</u>: Enable Stylists to access, update and manage the customer information database/management system from the mobile solution so as to streamline the entire Event process.

- <u>Customer data capture</u>: Replace manual batch paper-based processes to create/retrieve/update customer data, with a real-time solution on a mobile device.

- <u>Product availability search</u>: Enable real-time product availability on mobile device, eliminating the need for the Stylist to leave the customer to check product availability on registers.

- <u>Customer checkout</u>: DB customer surveys noted customers were dissatisfied with long wait times at checkout. Mobile solution would allow Stylist to complete the sale transaction on the selling floor, close out the appointment with the customer and schedule any follow-up appointments.

19. After reviewing available mobile solutions in the marketplace, DB ultimately selected Starmount as its strategic partner. DB selected Starmount because it explicitly promised a unique mobile POS architecture: A mobile POS system that Starmount had developed from the ground up (and so did not have the burden of legacy code), which DB could then overlay with customized code (such as Event (Registry), Layaway, Special Order Integration,

Commission Calculator and Outfit Builder).  This promised architecture would enable DB to utilize the unique applications it had developed for legacy POS over many years as part of the overall Mobile POS System supported by Starmount.

20.     Starmount further committed to either (a) incorporating DB enhancements into the base code product, supported by Starmount; or (b) placing DB enhancements into the DB customization code layer.  For the latter category, the parties further understood that Starmount would train DB developers so they could develop code in the DB customization layer while maintaining base code integrity.

21.     Based on the foregoing representations and mutual understanding, DB and Starmount entered into the MSA in October 2014.  Pursuant thereto, Starmount agreed to perform the services set forth on an annexed Statement of Work in exchange for service fees as set forth in a rate schedule annexed to the MSA.  (*See* MSA ¶ 1(a).)

22.     After a four-week inception engagement in late 2014, DB and Starmount agreed on licensing terms for development of the Mobile POS System in January 2015.

23.     Thus, on January 23, 2015, the parties entered into a Software License Agreement and related Software Maintenance and Support Agreement, pursuant to which DB purchased a license for the Starmount software for a license fee of approximately $2.1 million and agreed to pay maintenance and support fees equal to 20% of the license fee (or approximately $400,000) for the period through April 2017 and 20% of the license fee for each one-year renewal period thereafter.

24.     Following the execution of the License Agreement and payment of the license fee, DB and Starmount agreed on the following timeline: (1) a pilot program would be rolled out

in select stores for peak wedding season in October 2015, followed by (2) chain-wide roll out of the Mobile POS System in August 2016.

### B.     Starmount Fails to Deliver the Promised System

25.    From the outset, the project encountered delays and difficulties as Starmount failed to deliver the promised architecture.  Indeed, as DB later discovered, instead of overlaying DB's specific functionality code onto the Starmount base code, which was the principal reason DB engaged Starmount, Starmount took shortcuts and failed to adhere to its own architecture by intertwining the two codes, heavily modifying the code base and substantially compromising the integrity of the architecture's customization layer.

26.    As a result, when the beta version was finally rolled out in May 2016, more than seven months after Starmount had promised to roll out the pilot program, the Mobile POS System contained more than 9000 lines of code that had to be maintained by and for DB and was riddled with almost 600 coding errors.

27.    In short, DB paid Starmount more than $4 million in 2015 in licensing and servicing fees, but Starmount utterly and completely failed to comply with its contractual obligations.

### C.     Infor Acquires Starmount and Defendants Fraudulently Induce DB to Continue the Project

28.    In or about July 2016, Infor acquired Starmount as part of its efforts to expand its retail applications business.

29.    At that time and connection with the acquisition, the then-CIO of DB, Michael Toth, spoke with Greg Davis, DB's principal point of contact at Starmount, to discuss the prospective impact of the acquisition on the Mobile POS System project

30. During that conversation, Davis expressly represented to DB that Starmount remained fully committed to developing, delivering and supporting the Mobile POS System utilizing Starmount's architecture.

31. Davis further represented that the acquisition would benefit DB in the form of additional funding, personnel and other resources for Starmount to support its customers.

32. In reliance on those representations, DB consented to the assignment of the MSA pursuant to a letter from Starmount dated July 19, 2016 and countersigned by DB on July 28, 2016.

33. After the acquisition was completed, the principals of DB, Starmount and Infor met in October 2016 to discuss the Mobile POS System project. Attendees at that meeting included: for DB – Toth, Paul Pressler (then CEO), Joan Hilson (COO/CFO), for Starmount -- Davis, Joe Houlem (CEO), and for Infor – Wade Gerten, Mitchell Chi, Rick Berger and David Dorf.

34. At that meeting, Defendants' principals once again expressly represented to DB that they were committed to developing, delivering and supporting the Starmount architecture, *i.e.*, fulfilling Starmount's contractual obligations to DB.

35. Defendants further and once again represented to DB that the acquisition would benefit DB in the form of additional funding, personnel and other resources for Starmount to support its customers.

36. In reliance on Defendants' express representations, DB decided to continue with the project pursuant to the MSA and the parties' other agreements.

37. It quickly became apparent, however, that Defendants' representations to DB were knowingly false and that they had no intention of delivering the promised architecture.

38. Thus, shortly after the October 2016 meeting, Infor advised DB that it was shifting away from the Starmount architecture in favor of a cloud-based system, which was an "as is" configuration that did not offer a customization layer on the base mobile POS system. In other words, Defendants expressly refused to deliver what DB purchased from Starmount and completely abandoned the principal rationale for DB engaging Starmount to build its Mobile POS System.

39. At no time during the October 2016 meeting did Defendants advise DB that they were planning to move the Mobile POS System into the cloud, a move which DB later learned would take years to complete.

40. Moreover, by abandoning the Starmount architecture, on which the Mobile POS System was being developed, DB was saddled with an undesirable, bug-filled legacy system that Infor would not and has not committed resources to maintain.

**D.     Starmount Continues to Breach its Contractual Obligations to DB**

41. After Defendants fraudulently inducing DB to continue the project, Starmount continued to breach the MSA by failing to provide adequate support to DB or deliver the promised Mobile POS System.

42. Thus, immediately after the acquisition, Infor began redirecting resources away from DB in order to support Infor's cloud-based customers. Infor also insisted that its own representatives, who knew nothing about Starmount's products, would serve as main points of contact to DB in place of Starmount's representatives.

43. As a result, Starmount continuously failed to provide adequate support to DB, including remediating the hundreds of issues with the Mobile POS System.

44. In addition, around the time of the Infor/Starmount acquisition, Starmount began working on a software upgrade to the beta version of the Mobile POS System. While Starmount initially committed to completing the upgrade in three months, it ultimately took more than a year because of Starmount's improper intertwining of the base and customized code layers coupled with Defendants' failure to devote adequate resources to supporting DB's system.

45. Even when completed, the upgrade did not meet DB's expectations as it was full of bugs and errors. Furthermore, because Infor had abandoned the Starmount architecture for the cloud and so would not be developing further upgrades to Starmount's system, the upgrade itself was a technological dead end.

46. Defendants did finally roll out the Mobile POS System pilot in fourteen (14) stores in October 2016. As set forth above, that system did not function effectively, never provided the functionality promised by Starmount and was never adequately supported by Defendants. Moreover, the pilot stores are trapped in a now outdated mobile POS system, which DB cannot modify or integrate with the base code.

47. Between 2016 and 2017, DB paid Defendants an additional, approximately $2 million in fees, once again receiving little value in return.

48. Up to and including the present day, Defendants have never delivered the software architecture DB purchased and was promised, key performance issues remain and key functions are missing and/or defective, and the Mobile POS System has never progressed past the failed pilot stage.

E.  **The Instant Action**

49. Faced with a project that was grossly overbudget and behind schedule, DB attempted in good faith to negotiate a path forward with Defendants that would enable DB to achieve value from its investment in the Mobile POS System.

50. Thus, the parties held a series of meetings in Late 2017/Early 2018 to discuss a path forward for remediating Defendants' ongoing failures. Those negotiations were unsuccessful, however, in large part because Defendants refused to commit the resources necessary to deliver the promised architecture in a reasonable time frame. To the contrary, Defendants unreasonably demanded that *DB* commit additional capital to a project Defendants had failed for years to properly complete or support and outrageously offered a projected roll-out no earlier than mid-2020 – *four years behind schedule*.

51. Accordingly, DB brings this action to recoup its lost investment arising out of Starmount's breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, and damages, including lost profits and punitive damages, arising out of Defendants' fraudulent misrepresentations to DB in connection with Infor's acquisition of Starmount

**As and for a First Cause of Action for**
**Breach of Contract**

52. DB repeats and realleges the allegations set forth in paragraphs 1 through 51as if fully set forth herein.

53. The MSA is a lawful and enforceable contract between the parties thereto, and its terms remain in full force and effect.

54. At all relevant times, DB complied with its obligations pursuant to the MSA.

55. By the totality of its conduct and actions described above, Starmount has and continues to breach the MSA by (a) failing to develop, implement and deliver the Mobile POS

System in the manner and timeframe agreed to by the parties, (b) failing to remediate the hundreds of issues with the pilot system, and (c) failing to adequately support the pilot program.

56. As a result of Starmount's breaches of the MSA, DB has been damaged.

57. By reason of the foregoing, Starmount is liable to DB for damages in an amount to be determined at trial, but not less than $10 million, together with costs incurred by DB herein, including reasonable attorneys' fees.

### As and for a Second Cause of Action for
### Breach of the Covenant of Good Faith and Fair Dealing

58. DB repeats and realleges the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

59. DB and Starmount are each parties to the MSA, which is a valid and enforceable contract.

60. The covenant of good faith and fair dealing is implied in the MSA.

61. By the totality of its conduct set forth above, Starmount acted in bad faith by failing to develop the promised architecture, failing to resolve the hundreds of issues with the software delivered to DB, failing to implement a timely upgrade, failing to adequately support the Mobile POS System, and failing to deliver a useable product in accordance with the agreed-upon specifications for rollout across the DB chain

62. Starmount's conduct is a breach of the covenant of good faith and fair dealing

63. As a result of Starmount's breach, DB has suffered damages.

64. By reason of the foregoing, Starmount is liable to DB for damages in an amount to be determined at trial.

**As and for a Third Cause of Action for**
**<u>Unjust Enrichment</u>**

65.     DB repeats and realleges the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66.     Starmount has accepted millions of dollars from DB for the development, delivery and implementation of a Mobile POS System across all DB stores, but has refused to provide the agreed-upon system.

67.     By the totality of the conduct set forth above, Starmount has been unjustly enriched at DB's expense.

68.     By reason of the foregoing, Starmount is liable to DB for damages in an amount to be determined at trial.

**As and for a Fourth Cause of Action for**
**<u>Fraud in the Inducement</u>**

69.     DB repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.     In connection with Infor's acquisition of Starmount, Defendants expressly and specifically represented to DB that they would complete the development, delivery and implementation of the Mobile POS System that DB had purchased from Starmount, and provide DB with the necessary support for the Mobile POS System going forward.

71.     DB reasonably relied on Defendants' representations in agreeing to continue with the Mobile POS System project following Infor's acquisition of Starmount.

72.     Upon information and belief, Defendants' representations were knowingly and intentionally false when made.

73.     As a result of Defendants' fraudulent conduct, DB has been damaged.

74. By reason of the foregoing, Defendants are liable to DB for damages in an amount to be determined at trial, including consequential and punitive damages, as well as costs incurred by DB, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff David's Bridal, Inc. respectfully requests this Court enter judgment:

    a. On the First through Third Causes of Action, for compensatory damages in an amount to be determined at trial;

    b. On the Fourth Cause of Action, for compensatory, consequential, and punitive damages in an amount to be determined at trial;

    c. For attorneys' fees and the costs of this action; and

    d. For such other and further relief as the Court deems just and proper.

Dated: May 15, 2018
White Plains, New York

YANKWITT LLP

By: *[signature]*
Dina L. Hamerman
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 801-5930
dina@yankwitt.com
*Attorneys for Plaintiff*